# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RONALD G. SMITH,** | ) | 4:13CV3173 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **MARIO PEART,** | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Ronald Smith's ("Petitioner" or "Smith") Petition for Writ of Habeas Corpus. (Filing No. 1.) Smith argues that he is entitled to a grant of a writ of habeas corpus because his conviction for second degree murder was premised on an improper jury instruction. For the reasons set forth below, the court finds that a grant of a writ of habeas corpus is not warranted.

## I.  BACKGROUND

**A.**   **Conviction**

The State of Nebraska ("State") charged Smith by information in the Otoe County District Court ("state district court") with second degree murder; first degree forgery, which was later amended to second degree forgery; and theft by taking. (Filing No. 7-12 at CM/ECF p. 11.) The evidence presented at trial showed that:

> Smith and Harris lived together in a single family residence in Syracuse, Nebraska. In November 2008, both were laid off from their jobs at a Syracuse manufacturing company. Both received severance checks in December as a result of the layoffs; Harris's check was for $3,067.51, and Smith's check was for $3,218.97.
>
> Smith cashed his check at a Syracuse bank on December 19, 2008. Smith cashed Harris's check at the drive-through window of the same bank at approximately 10 a.m. on December 23. He was driving Harris's vehicle at the time and told the teller that he needed the money because Harris had

broken her leg and was in the hospital. Smith left Syracuse after cashing the check.

From December 23 to 25, 2008, both Harris's adult son and Harris's sister tried unsuccessfully to contact her on her cellular telephone. Finally, on December 25, Harris's sister called Smith on his cellular telephone to ask if he knew where Harris was. Smith told the sister that Harris was having trouble with her cellular telephone, but that he had seen her that morning and that she was fine. Smith also told the sister that he was in St. Louis, Missouri, and that he would be back home the next day.

Harris's sister remained concerned after speaking with Smith, so she called Harris's son and asked him to go to the house and check on Harris. The son went to the house at approximately 5:30 p.m. on December 25, 2008. He discovered Harris's body on the floor of the bedroom. The body was face up, lodged between the bed and the wall, and partially covered with a blanket.

A pillow covered in a dark-blue pillowcase was found on the floor near Harris's head, and strands of her hair and blood were found on the pillowcase and pillow. Investigators did not observe any defensive wounds on Harris's hands or arms and saw no signs that a struggle had occurred in the room. Investigators noticed that the mattress on the bed was shifted about 6 inches to one side, so that the mattress and boxspring did not meet on the side of the bed where Harris's body was found.

After finding his mother's body, Harris's son made several calls to Smith's cellular telephone and left angry messages, informing Smith that the police were looking for him. Smith did not return the calls. On December 27, 2008, a tearful Smith called the 911 emergency dispatch service in Illinois and stated that he had been on a drug and alcohol binge for 2 weeks and thought he had killed someone in Nebraska. When Smith was subsequently arrested by Illinois law enforcement authorities, he was extremely intoxicated; hospital records show he had a blood alcohol content of .435 on the evening of December 27.

Smith was interviewed by Nebraska law enforcement authorities on December 28, 2008, at 2:35 p.m. He was informed of and waived his Miranda rights prior to this interview. The interview was recorded and was played to the jury at trial.

During the interview, Smith stated that after losing his job, he began drinking and using methamphetamine on a regular basis. Smith said that he arrived at the home which he and Harris shared at approximately 1 a.m. on December 22, 2008, after a night of drinking and drug use. Harris was asleep

> in the bedroom when he arrived, and Smith slept on the couch. When Smith awoke at approximately 5:30 or 6 a.m., he and Harris began arguing in the bedroom. They argued about Smith's drinking and drug use, their recent layoffs, and money. At some point during the argument, Smith pushed Harris from her bed. She hit the floor hard and lay there motionless with her face up. Smith took a pillow from the bed and held it over Harris's face for 1 to 2 minutes. She did not resist. Smith covered Harris with a blanket, kissed her, and left the house in Harris's vehicle. He admitted that he took Harris's severance check, cashed it, and then left the state. Harris's cellular telephone and $15.65 in cash was found in Smith's motel room at the time of his arrest in Illinois. During his interrogation, Smith wrote a note to Harris's family in which he stated: "There is nothing I can say to justify my actions.... I just hope your family can move on. Sorry is not enough I know that but its [sic] all I can do right now."
>
> Two medical experts testified as to the cause of Harris's death. The pathologist who testified for the State had performed the autopsy on Harris and had authored a report stating that Harris's cause of death was "undetermined," but that nothing in the autopsy was inconsistent with a death caused by smothering. A forensic pathologist testified for Smith. He reviewed photographs of the autopsy, the autopsy report, photographs of the crime scene, and Harris's medical records. He testified that Harris died from natural causes, specifically, heart disease and sleep apnea. He opined that smothering could not have been the cause of Harris's death, because there was no forensic evidence of a struggle prior to her death.

*State v. Smith*, 806 N.W.2d 383, 386-87 (Neb. 2011).

On September 4, 2009, a jury found Smith guilty of second degree murder, second degree forgery, and theft by taking. (Filing No. 7-12 at CM/ECF p. 80.) Smith's petition for writ of habeas corpus relates to his conviction for second degree murder, for which he was sentenced to 40 to 70 years' imprisonment. (*Id.* at CM/ECF p. 85.)

**B.     Direct Appeal**

Smith appealed the state district court's judgment of conviction and sentence. (*Id.* at CM/ECF p. 1.) On motion by Smith, the case was moved directly to the docket of the Nebraska Supreme Court. (Filing No. 7-3 at CM/ECF p. 2.) On consideration of Smith's

direct appeal, the Nebraska Supreme Court held that the step instruction given in Smith's case was not a correct statement of the law. *Smith*, 806 N.W.2d at 394. It determined, however, that the improper jury instruction did not prejudice Smith or affect his substantial rights and was therefore harmless error. *Id.* at 395. Smith moved for rehearing in the Nebraska Supreme Court, arguing that the court had erred in concluding that the improper jury instruction constituted harmless error. (Filing No. 7-8.) The Nebraska Supreme Court overruled Smith's motion for rehearing. (Filing No. 7-3 at CM/ECF p. 3.)

**C.   Post-Conviction Motion and Appeal**

Smith filed a motion for post-conviction relief on January 2, 2013. (Filing No. 7-13 at 89-102). Smith argued that the Nebraska Supreme Court had erred in concluding that the improper jury instruction was harmless error. (*Id.* at CM/ECF p. 96.) The state district court determined that Smith's argument was procedurally barred. (*Id.* at CM/ECF p. 112-13.) Smith appealed the denial of post-conviction relief to the Nebraska Court of Appeals, which summarily affirmed the judgment of the state district court. (Filing No. 7-2 at CM/ECF p. 2.) Thereafter, the Nebraska Supreme Court denied Smith's petition for further review. (Filing No. 7-4 at CM/ECF p. 2.)

**D.   Habeas Corpus Petition**

Smith timely filed his habeas corpus petition in this court on October 1, 2013. (Filing No. 1.) In response to Smith's petition, Respondent filed an answer, a brief in support of his answer, and the relevant state court records. (Filing Nos. 7, 8, 10, and 11.) The court deems this matter fully submitted.

## II. STANDARD OF REVIEW

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so

regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

### III. DISCUSSION

Smith argues that the state district court did not properly instruct the jury on the distinction between second degree murder and manslaughter, and the error was "structural" and therefore not subject to harmless error analysis by the Nebraska Supreme Court. (Filing No. 1 at CM/ECF pp. 1, 16-17.)

At Smith's trial, the jury was instructed that to convict Smith of second-degree murder, the State had to prove beyond a reasonable doubt that Smith killed Harris intentionally but without premeditation. The jury was then instructed that, if it found the State had proved each element beyond a reasonable doubt, it was its "duty to find [Smith] guilty of the crime of murder in the second degree." (Filing No. 7-12 at CM/ECF p. 59.) The jury was instructed that it could proceed to consider whether Smith committed manslaughter only if it found that the State had failed to prove any one or more of the material elements of second degree murder beyond a reasonable doubt. (*Id.*)

**A.     State Court Findings**

On direct appeal, Smith argued that the jury was not properly instructed on the distinction between second degree murder and manslaughter. *Smith*, 806 N.W.2d at 388. The Nebraska Supreme Court agreed, finding that the step instruction given was not a correct statement of the law. Specifically, the court held that the instruction required the jury to convict on second degree murder if it found that Smith killed Harris intentionally, but it did not permit the jury to consider the alternative possibility that the killing was intentional but provoked by a sudden quarrel, and therefore constituted manslaughter. *Id.* at 394.

The court, however, determined the error was harmless. It wrote, in relevant part:

> Having identified trial error, we must now consider whether it was prejudicial or harmless. Before an error in the giving of jury instructions can be considered as a ground for reversal of a conviction, it must be considered prejudicial to the rights of the defendant. The appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.
>
> A trial court is required to give an instruction where there is any evidence which could be believed by the trier of fact that the defendant committed manslaughter and not murder. But a trial court is not obligated to instruct the jury on matters which are not supported by evidence in the record. In the context of this case, Smith was prejudiced by the erroneous jury instruction only if the jury could reasonably have concluded on the evidence presented that his intent to kill was the result of a sudden quarrel.
>
> The only evidence of the events which transpired immediately prior to Harris' death is the video recording of Smith's interrogation following his arrest, as summarized above. From this, the jury could reasonably infer that Smith and Harris had been arguing and that Smith was angry. But there is no evidence explaining how or by whom the argument was started, its duration, or any specific words which were spoken or actions which were taken before Smith pushed Harris to the floor. And most importantly, there is no evidence that Harris said or did anything which would have provoked a reasonable person in Smith's position to push her from the bed and smother her with a pillow. In the absence of some provocation, a defendant's anger with the victim is not sufficient to establish the requisite heat of passion. Nor does evidence of a string of prior arguments and a

> continuing dispute without any indication of some sort of instant incitement constitute a sufficient showing to warrant a voluntary manslaughter instruction.
>
> We conclude that there is no evidence in this record upon which the jury could have concluded that Smith committed sudden quarrel manslaughter instead of second degree murder. We therefore conclude that the improper jury instruction did not prejudice Smith or affect his substantial rights, and does not require the reversal of his second degree murder conviction.

*Id.,* at 394-95 (footnotes omitted).

As set forth above, Smith moved for rehearing in the Nebraska Supreme Court, arguing that the court had erred in concluding that the improper jury instruction constituted harmless error. (Filing No. 7-8.) The Nebraska Supreme Court overruled Smith's motion for rehearing. (Filing No. 7-3 at CM/ECF p. 3.)

**B.   Analysis**

The court may grant a writ of habeas corpus only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Liberally construed, Smith argues that the Nebraska Supreme Court's decision was an unreasonable application of clearly established Federal law set forth in *Sullivan v. Louisiana*, 508 U.S. 275 (1993). Specifically, Smith argues that the error in instructing the jury was "structural" and therefore not subject to harmless error analysis. (Filing No. 13 at CM/ECF pp. 7-8.) Smith further argues that "a jury instruction which incorrectly sets forth a material element

9

of an offense constitutes a structural error which is not subject to harmless error analysis." (*Id.* at CM/ECF p. 4.)

Structural errors are defects that fundamentally undermine the reliability and fairness of a trial and therefore are not subject to harmless-error analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). The Supreme Court has found an error to be structural, and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997). For example, a total deprivation of the right to counsel is deemed structural defect, *see Gideon v. Wainwright*, 372 U.S. 335 (1963), as is the denial of hired counsel of the defendant's choice, *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

The principal Supreme Court case finding structural error in the area of defective jury instructions is *Sullivan v. Louisiana*, 508 U.S. 275 (1993). In *Sullivan*, the trial court gave the jury a defective reasonable doubt instruction in violation of the defendant's Fifth and Sixth Amendment rights to have the charged offense proved beyond a reasonable doubt. The Supreme Court concluded that the error was not subject to harmless-error analysis because it "vitiate[d] *all* the jury's findings," 508 U.S. at 281, and produced "consequences that are necessarily unquantifiable and indeterminate." *Id.* at 282. The Supreme Court has never treated errors in describing the elements of an offense as structural errors. Indeed, in *Neder v. United States*, the Court held that harmless-error analysis applied even where the jury was not instructed *at all* on an essential element of the offense. 527 U.S. at 9.

As the Supreme Court noted in *Neder*, harmless-error analysis applies to an improper instruction regarding an element of the offense. Accordingly, the Nebraska Supreme Court's decision to apply harmless-error analysis in the state court proceedings cannot be said to have been contrary to, or involving an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

Smith's arguments before this court focus on his assertions that the error in instructing the jury was structural and therefore not subject to harmless-error analysis. He appears to concede that, when harmless-error analysis is actually applied to the facts presented at trial, he is not entitled to relief. (*See* Filing No. 13 at CM/ECF p. 9 (arguing that he failed to "establish a trial record that would support" a manslaughter conviction because he knew the state district court was not going to properly instruct the jury on the distinction between second degree murder and manslaughter).) Indeed, the Nebraska Supreme Court's factual findings, which Smith has not rebutted, are that there was no evidence presented at trial "that Harris said or did anything which would have provoked a reasonable person in Smith's position to push [Harris] from the bed and smother her with a pillow." *Smith*, 806 N.W.2d at 395. Thus, there is no evidence in the record upon which a jury could have concluded that Smith committed sudden quarrel manslaughter instead of second degree murder. In other words, the state district court's error in instructing the jury was harmless.

For the reasons set forth above, the court finds that the Nebraska Supreme Court's findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state

11

courts. Smith has not established that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Accordingly, Smith is not entitled to the grant of a writ of habeas corpus in this matter.

### IV. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Smith has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the issues raised in the Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case. Accordingly,

IT IS ORDERED:

1. This matter is dismissed with prejudice, and a separate judgment will be entered in accordance with this Memorandum and Order.

2. The court will not issue a certificate of appealability in this matter.

DATED this 14th day of July, 2014.

          BY THE COURT:

          s/Laurie Smith Camp
          Chief United States District Judge